Areya Holder Aurzada
State Bar No. 24002303
HOLDER LAW
901 Main Street, Suite 5320
Dallas, TX 75202
Telephone: (972) 438-8800
Email: areya@holderlawpc.com

COUNSEL FOR GOLF TAILOR, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GOLF TAILOR, LLC | § | CASE NO. 21-30995-MVL |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

## DEBTOR'S AMENDED DISCLOSURE STATEMENT

TO: Creditors and Equity Security Holders of Golf Tailor, LLC ("Debtor"):

Contained in this packet of documents which has been sent to you by the Debtor is the Debtor's Amended Disclosure Statement (the "Disclosure Statement"), the Debtor's Amended Plan of Reorganization (the "Plan"), the Ballot for Voting on the Plan of Reorganization, and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof.  Please read all of these materials carefully.  Please note that in order for your vote to be counted, you must complete, date, sign, and return the enclosed Ballot to the attorney for the Debtor by the date specified on the ballot.  The ballot must also include your name and address.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GOLF TAILOR, LLC | § | CASE NO. 21-21-30995-MVL |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

## DEBTOR'S AMENDED DISCLOSURE STATEMENT

### ARTICLE I

### INTRODUCTORY STATEMENT

Debtor filed with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, its Plan in the above-captioned case on August 16, 2021. Pursuant to the terms of the United States Bankruptcy Code, this Disclosure Statement has been presented to and approved by the Bankruptcy Court. Such approval is required by statute and does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby. Interested parties are referred to 11 U.S.C. section 1125, which reads, in part:

> "(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this Title from a holder of a claim or interest with respect to such claim or interest unless, at the time or before such solicitation, there was transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the Court as containing adequate information. The Court may approve a disclosure statement without a valuation of the Debtor or an appraisal of the Debtor' assets.
> . . . .
> (d) Whether a disclosure statement contains adequate information is not governed by any otherwise applicable non-bankruptcy law, rule or regulation, but an agency or official whose duty is to administer or enforce such a law, rule or regulation may be heard on the issue of whether a disclosure statement contains adequate information. Such an agency or official may not appeal from an order approving a disclosure statement.
>
> (e) A person that solicits, in good faith and in compliance with, the applicable provisions of this Title, or that participates, in good faith and in compliance with the applicable provisions of this Title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the Debtor, of an affiliate participating in a joint plan with the Debtor, or of a newly organized

successor to the Debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of securities."

The Debtor has prepared this Disclosure Statement to disclose that information which, in its opinion, is material, important and necessary to an evaluation of the Plan.  The material herein contained is intended solely for that purpose, and solely for the use of known creditors and interest holders of the Debtor and, accordingly, may not be relied upon for any purpose other than determination of how to vote on the Plan.  In addition, materials contained in this Disclosure Statement are not necessarily sufficient for the formation of a judgment by any creditor of the preferability of any alternative to the Plan.  This Disclosure Statement has not necessarily been reviewed nor has it been approved by the Securities and Exchange Commission or any other agency of the state or federal government.

**THE APPROVAL BY THE BANKRUPTCY COURT OF THE DISCLOSURE STATEMENT DOES NOT GUARANTEE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED BY THE DEBTOR.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF.  THE DEBTOR IS UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE.**

**THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTOR OR ITS AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED.  THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY THE DEBTOR'S COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC.  NEITHER THE DEBTOR NOR ITS COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.**

**AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING**

**OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN THE DEBTOR.**

The Debtor has proposed the Plan hereinafter described and favors it. Materials referring to alternatives to the Plan are limited by both practical considerations of space and the opinions of the Debtor regarding same.

A creditor or interest holder, in order to vote on the Plan, must have filed a proof of claim or interest on or before the Bar Date, unless scheduled by the Debtor as undisputed, unliquidated or contingent. Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim and, absent objection, such claim is deemed allowed. A creditor or interest holder may vote to accept or reject the Plan by filling out and mailing to the Bankruptcy Court the ballot which has been provided in this package of information.

The Court has fixed _____ at 5:00 p.m., as the last date by which ballots must be served on the attorney for the Debtor. No vote received by the Court and the attorney for the Debtor after such time will be counted. Whether a creditor or interest holder votes on the Plan or not, such person will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majority of classes of creditors and interest holders and/or is confirmed by the Court. Absent some affirmative act constituting a vote, such creditor or interest holder will not be included in the tally. Allowance of a claim or interest for voting purposes does not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed for distribution purposes.

In order for the Plan to be accepted by a class of creditors, more than one half in number and at least two-thirds in amount of such class of claims must vote to accept the Plan. Only those claim holders that actually vote are considered in the calculations. In order for the Plan to be accepted by interest holders, at least two-thirds in amount of interests must vote to accept the plan. Again, only voting interest holders are considered in the calculation. You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished you. Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder.

The Debtor, creditors or others may solicit your vote. The cost of any solicitation by the Debtor will be borne by the Debtor. No representative of the Debtor shall receive any additional compensation for any solicitation.

No representations concerning the Debtor or the Plan are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representation or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and such representations or inducements should be reported to counsel for the Debtor, who shall deliver such information to the Bankruptcy Court.

Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtor has

made every effort to retain the meaning of such other instruments or the portions transposed, the Debtor urge that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.

Terms used in this Disclosure Statement are defined in Article I of the Plan, and those terms should be read together with those definitions.

## ARTICLE II

## NATURE AND HISTORY OF THE EVENTS LEADING UP TO BANKRUPTCY

Debtor operates an online golf products sales company that ships and distributes golf clubs, golf accessories and golf instruction videos to customers across the United States. Debtor sells these goods to a general market of online buyers, and Debtor has operated the company since 2015.

From the inception of the company to 2018, the company underwent explosive growth due to an aggressive marketing campaign. However, with this growth, came significant advertising costs. In addition, in 2019, some of the new products did not perform as predicted for sales and, more importantly, cash flow decreased. In its effort to maintain cash flow, the company further increased its marketing spend in order to increase sales. This effort did not achieve the company's desired goals and consequently increased debt and the ability to pay creditors in a timely manner. To offset the reduction in cash, the company borrowed money from lenders at a higher burden of interest and fees due to the company's struggling financial condition. In an effort to save the company and pay creditors to the best of its ability, the company filed for bankruptcy relief under Chapter 11 on May 28, 2021.

## ARTICLE III

## DISCLOSURE OF INSIDER AFFILIATIONS AND MANAGEMENTOF THE REORGANIZED DEBTOR

Debtor is organized as a limited liability company, and Debtor's largest members are Tim Oyler and Michael Rhine who each own a 40% interest in the Debtor respectively. Both Mr. Oyler and Mr. Rhine work and manage the business affairs and operations on a daily basis. Tim Oyler currently serves as the President of the Debtor, and Michael Rhine serves as the Chief Marketing Officer. Neil Goldstein was hired approximately one year prior to the filing of the bankruptcy to help navigate and facilitate the bankruptcy process and currently serves as the company's Chief Restructuring Officer. There are 6 other members of the Debtor, and each of the remaining members owns a 5% or less interest in the business.

Upon exiting bankruptcy, the reorganized Debtor will continue to be managed primarily by Mr. Oyler and Mr. Rhine. Mr. Goldstein will exit his position as the Chief Restructuring Officer shortly after a successful reorganization and Confirmation of the Debtor's Plan. Upon Confirmation, Mr. Oyler and Mr. Rhine will continue to receive their existing monthly salaries of $25,000.00 each.

## ARTICLE IV

## THE PLAN OF REORGANIZATION

The Plan has been provided to all creditors or possible creditors and all interest holders of the Debtor known to the Debtor. The Plan should be read carefully and independently of this Disclosure Statement.

## ARTICLE V

## DIVISION OF CREDITORS AND INTEREST HOLDERS INTO CLASSES

The Plan classifies and treats various classes of creditors of the Debtor's estate. Set forth below is a summary of classification and treatment of creditors' claims under the Plan. For the purpose of satisfaction of all Claims against and Interests in the Debtor, the Claims and Equity Interests are divided into the following classes:

A. *Priority Claims*:

Class 1: All Allowed Administrative Claims.

B. *Secured Claims*:

Class 2: All Allowed Secured Claims of American Express (Impaired).

Class 3: All Allowed Secured Claims of Clear Finance Technology Corporation/CT Corporation Systems (Impaired).

Class 4: All Allowed Secured Claims of Corporate Disk Company (Impaired).

C. *Unsecured Claims*:

Class 5: All Allowed Unsecured Claims (Impaired).

Class 6: All Allowed Unsecured Convenience Claims (Impaired).

D. *Equity Interest Holders*:

Class 7: All Allowed Equity Interest Holders (Unimpaired).

## ARTICLE VI

## TREATMENT OF CLAIMS AND INTERESTS.

A. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS AND INTERESTS

Administrative Claims: (Class 1) – Administrative Claims, other than administrative claims filed by governmental units, shall be paid, to the extent allowed by the Court, in full in cash on or before the later of (a) ten (10) days following the Effective Date or (b) ten (10) days following the date on which the Administrative Claims are Allowed by a Final Order of the Court. For purposes of payment of administrative expenses, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan except as otherwise provided under 11 U.S.C. §503(b)(1)(D). However, this provision shall not apply to ad valorem 2021 tax claims.  In addition, all quarterly fees to the United States Trustee will be paid until such time that the Debtor's case is closed, converted or dismissed.

Professional Fee Claims.  Each Professional employed pursuant to Section 330 of the Code shall file their final Fee Application with the Court within sixty (60) days after the Effective Date, unless the Court orders otherwise.  Service of a final Fee Application or notice related to a final Fee Application shall be promptly made to the Reorganized Debtor and parties requesting notice in this case. Objections to any Professional Fee Claims by any party in interest shall be filed and served not later than twenty (20) days after filing and service of a Final Fee Application or service of a notice related to a Final Fee Application.  Debtor estimates the outstanding professional fees will be approximately $25,000.00.

B.  TREATMENT OF SECURED AND UNSECURED CREDITORS

All Allowed Secured Claims of American Express: (Class 2) – Class 2 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). Debtor estimates the allowed secured claim of American Express at zero.  Upon information and belief, American Express does not have a lien or security interest in any of the Debtor's assets, and American Express is not a judgment creditor of the Debtor.  In the event American Express is determined to hold an allowed unsecured claim, American Express will be treated and paid in accordance with other unsecured creditors as set forth in Class 5.  Upon Confirmation, American Express shall promptly release its UCC filing against the Debtor.

The Class 2 Claims are impaired.

All Allowed Secured Claims of Clear Finance Technology Corporation/CT Corporation Systems ("CFT"): (Class 3) – Class 3 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s).  The estimated Class 3 Claim is $198,706.80 based upon the value of the Debtor's accounts receivable at the time of Debtor's bankruptcy filing.  The allowed Class 3 claim will be paid over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three and a quarter percent per annum (3.25%). The monthly payment to CFT will be approximately $3,592.62 per month.

All remaining amounts due and owing to CFT will be treated and paid in accordance with general unsecured creditors as set forth in Class 5 below.

Upon payment of the Class 3 allowed claim, CFT shall promptly release its UCC filing against the Debtor.

The Class 3 Claims are impaired.

All Allowed Secured Claims of Corporate Disk Company: (Class 4) – Class 4 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). The estimated Class 4 Claim is $175,000.00 based upon the value of the inventory in the possession of Corporate Disk Company at the time of Debtor's bankruptcy filing. The allowed Class 4 claim will be paid over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three and a quarter percent per annum (3.25%). The monthly payment to Corporate Disk Company will be approximately $3,164.00 per month.

All remaining amounts due and owing to Corporate Disk shall be treated and paid in accordance with general unsecured creditors as set forth in Class 5 below.

The Class 4 Claims are impaired.

All Allowed Unsecured Claims: (Class 5) – A Class 5 Claimant holding an Allowed Unsecured Claim shall be paid a pro rata share of $800,000.00 over sixty (60) months from the Effective date of the confirmed Plan. Debtor shall begin making payments in monthly installments on the Class 5 Claims thirty (30) days after the Effective date of the confirmed Plan. To the extent a claim is not allowed until a date after the commencement of the sixty (60) month payment period, payments on such allowed claim will commence and be due and payable on the first day of the month following the date of the order allowing such claim, and the first day of each month remaining in the sixty (60) month payment period in an amount sufficient to pay the allowed unsecured claim its pro rata share as set forth herein. The first payment to Class 5 Claimants will be the claimant's pro rata share of the monthly payment of $13,333.33 designated for allowed unsecured claims. Monthly payments on allowed unsecured claims will continue each month for sixty (60) months, and allowed unsecured claimants will continue to receive their pro rata portion of the $13,333.33 monthly payment for sixty (60) months.

At the time of the filing of Debtor's Plan, Debtor's bankruptcy schedules reflected a total of $12,778,811.24 in general unsecured claims. Debtor estimates the dividend to unsecured creditors to be approximately 6.25% of each creditor's allowed unsecured claim.

The Class 5 claims are impaired.

All Allowed Unsecured Convenience Claims: (Class 6) – On or before, but no later than twenty (20) days after the Effective Date, the holder of any Allowed General Unsecured Claim may elect to reduce the holder's Allowed Claim to $500, after which the Allowed Claim shall be treated as a Convenience Claim. Allowed Convenience Claims shall be paid in full within 90 days after the Effective Date.

The Class 6 claims are impaired.

Equity Interest Holders: (Class 7) - The pre-petition interests in this Debtor shall be cancelled. The Debtor shall issue a new equivalent unit of ownership in the Reorganized

Debtor to the current members of the Debtor in the same amount and percentage as each member previously owned prior to the bankruptcy filing. In exchange for the issuance of the new equivalent unit of ownership, Tim Oyler and Michael Rhine will together contribute a total of $25,000.00 in new value to the Reorganized Debtor. Mr. Oyler and Mr. Rhine currently own an 80% equity interest in the Debtor (40% and 40% respectively) and will own an 80% equity interest in the Reorganized Debtor (40% and 40% respectively) unless a bid is placed in excess of the $25,000.00 new value offer set forth herein.

The Class 7 Claims are impaired.

<u>Payments to the United States Trustee</u>:  The Reorganized Debtor shall pay all quarterly fees of the United States Trustee until the Case is closed.

  C. <u>FUNDING OF THE PLAN, AND SOURCES AND USES OF PLAN FUNDS</u>.

Debtor shall execute and deliver such documents, agreements and instruments reasonably necessary to carry forward the intents and purposes of this Plan. The funding of the indebtedness contained in the Plan will be from revenues generated by Debtor's continuing business operations and the $25,000.00 in new value contributed by Mr. Oyler and Mr. Rhine.

  D. <u>RETENTION OF JURISDICTION</u>

The Plan includes provisions regarding the retention of jurisdiction by the Bankruptcy Court over a variety of matters as may be pending as of Confirmation or as may arise subsequent thereto.

  E. <u>FINANCIAL INFORMATION OF REORGANIZED DEBTOR</u>

Debtor's Financial Projections for 2021 through 2026 are attached hereto as *Exhibit A* and incorporated by reference herein. Debtor's financial projections show that Debtor estimates it will generate net income of $57,250.00 over the next 12 months after the payment of all Plan payments. For each year thereafter, Debtor estimates it will net sufficient income to allow for a continued and successful operation of the business as a going concern as well as a small equity cushion. These figure along with the new value contribution from Mr. Oyler and Mr. Rhine will provide sufficient income to pay the proposed monthly plan payments of approximately $20,089.95 per month in order to fund the Debtor's Plan.

  F. <u>LIQUIDATION ANALYSIS</u>.

In the event of a liquidation of the Debtor's assets in a Chapter 7 bankruptcy case, the Debtor's would be sold by a Chapter 7 trustee through a marketing and sales process. Debtor believes that in the event of an orderly liquidation of the Debtor's assets by a Chapter 7 trustee, the following analysis would dictate the results to creditors:

<u>ASSETS</u>

| | |
|---|---|
| Cash and checking accounts | $500,000.00 |
| Accounts receivable | $198,706.80 |
| Inventory in Chicago | $175,000.00 |
| Inventory in Transit | $200,000.00 |
| Office furniture | $3,000.00 |
| Customer list and licenses | $7,500.00 |
| Intellectual property including patents, copyrights and trade secretes | $25,000.00 |
| **Total Assets** | **$1,109,206.80**[1] |

EXPENSES OF LIQUIDATION

Administrative Expenses

<u>Chapter 11</u>

| | |
|---|---|
| Chapter 11 Debtor's Counsel | $25,000.00 |
| U.S. Trustee Fees | $30,000.00 |

<u>Chapter 7</u>

| | |
|---|---|
| Trustee's Fee and Expenses | $54,816.00 |
| Attorney's Fees and Auctioneers | $35,000.00 |
| Accounting Fees | $5,000.00 |
| **Total Administrative Expenses** | **$149,816.00** |

Secured Debt

| | |
|---|---|
| American Express (disputed secured claim) | $0 |
| Clear Finance Technology Corporation | $198,706.80[2] |
| Corporate Disk Company | $175,000.00[3] |
| **Total Secured Debt** | **$373,706.80** |

| | |
|---|---|
| **TOTAL EXPENSES OF LIQUIDATION** | **$523,522.80** |
| **ESTIMATED PAYMENT TO UNSECURED CREDITORS** | **$585,684.00** |

($1,109,206.80 in Assets less $523,522.80 in Total Expenses of Liquidation = $585,684.00)

---

[1] The values included herein were determined using a replacement value method for office furniture and the liquidation value of the inventory. Cash and checking account value are based upon current cash on hand and approximate account balances. Intellectual property values were determined based upon the Debtor's estimate of what it might receive if those items were placed on the market for sale.    The value of the customer list was based upon what a buyer of customer information would pay at approximately $3 per customer.

[2]  The secured claim of Clear Finance Technology Corporation is limited to the value of the accounts receivable as of the bankruptcy filing date.

[3]  The secured claim of Corporate Disk Company is limited to the value of the inventory in its possession as of the bankruptcy filing date.

Based on the above assets and liabilities, unsecured creditors would receive **$585,684.00** in a Chapter 7 liquidation as compared to the $800,000.00 to unsecured creditors that Debtor is proposing under its Plan of reorganization. In addition, a Chapter 7 liquidation could take several years before a distribution is made to unsecured creditors as opposed to Debtor' Plan which proposes to begin making payments to creditors within 30 days of the Effective Date of the confirmed Plan. Further, bank fees will be assessed on all sales proceeds held by a Chapter 7 trustee which will further reduce the available funds to unsecured creditors in the event of a Chapter 7 liquidation.

## ARTICLE VII

## CONSIDERATIONS IN VOTING ON THE CHAPTER 11 PLAN

A. OPERATION OF CHAPTER 11

In a Chapter 11 case, unless a trustee has been appointed, the Debtor is the only possible proponent of a plan of reorganization during the initial 120 days of the proceedings after an order for relief has been entered.

Chapter 11 of the Bankruptcy Code permits the adjustment of secured debts, unsecured debts and equity interests. A Chapter 11 plan may provide less than full satisfaction of senior indebtedness or junior indebtedness or may provide for a return to equity owners absent full satisfaction of indebtedness so long as no impaired class votes against the plan.

In the event a class is unimpaired, it is automatically deemed to accept the plan. A class is unimpaired, in essence, if: (1) its rights at confirmation are the same as what existed (or would have existed absent defaults) before the date of the filing of the petition commencing the Chapter 11 case and any existing defaults are cured or provided for and the class is reimbursed actual damages; or (2) the allowed claims of the class are paid in full in cash as though matured.

If an impaired class votes against the Plan, this does not necessarily make implementation of the Plan impossible so long as the Plan is fair and equitable and that class is afforded certain treatment defined by the Bankruptcy Code and at least one other impaired class votes for the Plan. The required treatment may be very broadly defined as providing to a creditor the face value of its claim. If the treatment afforded the dissenting class of creditors is equal to or greater than the face value of the claims of such class, the Plan may be confirmed over the dissent of that class. The Plan may also be confirmed over dissent if classes junior to the dissenting class receive no consideration under the Plan.

If there is no dissenting class, the basic tests for approval by a Court of a Chapter 11 plan (i.e., confirmation) are whether the Plan is in the best interests of creditors and interest holders and is feasible. A court will find a Plan to be in the best interests of creditors and interest holders if the plan will provide a recovery to the creditors and interest holders at least equal to that which they would obtain if the Debtor was liquidated and the proceeds of liquidation were distributed in accordance with bankruptcy liquidation (Chapter 7) priorities. In other words, if the plan

provides each class of creditors and interest holders with money or other property of a value equaling or exceeding the probable dividend in liquidation bankruptcy, then the Plan is in the best interests of creditors and interest holders. The Court, in considering whether the Plan is in the best interest of creditors and interest holders, is not required to consider any alternative to the Plan other than liquidation bankruptcy.

In considering feasibility (i.e., that confirmation is not likely to be followed by liquidation or further reorganization), the Court is only required to determine whether the Plan can be performed by the Debtor.

This entails determining:

(1) The availability of cash for payments required at confirmation;
(2) The ability of the Debtor to generate future cash flow sufficient to make payments called for under the Plan and to continue in business; and
(3) The absence of any other factor which would make it impossible for the Debtor to accomplish that which they promise to accomplish in the Plan or continue its existence as contemplated in the Plan.

In addition, in order to confirm a Plan, the Court must find among other things that the Plan was proposed in good faith and that the Plan and its proponents are in compliance with the applicable provisions of the Bankruptcy Code.

These determinations by the Court occur at the hearing on a confirmation after a Plan has been accepted by vote of the creditors and interest holders. The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any debt instrument or equity interest or securities issued to or for the benefit of the creditors under the Plan.

B. <u>ALTERNATIVES TO THE PLAN</u>

Although the Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful. The Debtor believes the proposed Plan to be in the best interests of creditors and the Debtor and does not favor any alternative to the proposed Plan. In arriving at that conclusion, Debtor assesses the alternatives as follows:

1) <u>Chapter 7 Liquidation Analysis</u>. Debtor could convert the Case to Chapter 7 and allow a bankruptcy trustee to be appointed to liquidate and distribute assets. In the event that the Court does not confirm a plan of reorganization in this case, conversion to Chapter 7 will likely result. Debtor believes this alternative to be unsatisfactory because Unsecured Creditors would receive $585,684.00 in a Chapter 7 bankruptcy proceeding (as cited in the Liquidation Analysis referenced above) as opposed to the $800,000.00 that Debtor is proposing to pay to unsecured creditors under this Plan of reorganization. In addition, it will likely take at least 1 – 2 years before a Chapter 7 trustee would make distributions in the event of a liquidation. In contrast,

Debtor will begin making payments to creditors within 30 days of the Effective Date of the confirmed Plan. In sum, Debtor's Plan proposes to pay over 30% more to unsecured creditors than unsecured creditors would receive in a Chapter 7 liquidation.

2) <u>Dismissal of the Case</u>. Dismissal of the Chapter 11 case would most likely lead to the same unsatisfactory result as a Chapter 7 liquidation. Secured creditors would like foreclose on their respective collateral and business operations would cease. Most, if not all, accounts receivable would likely go uncollected, and the majority of the cash on hand would be used to wind down and shut down the business.

The Debtor has attempted to set forth alternatives to the proposed Plan. However, the Debtor must caution creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan fails to be accepted. If you believe one of the alternatives referred to is preferable to the Plan and you wish to urge it upon the Court, you should consult counsel.

C.     SPECIFIC CONSIDERATIONS IN VOTING

A creditor or interest holder, in order to vote on the Plan, must have filed a proof of claim or interest on or before the Bar Date, unless scheduled by the Debtor as not disputed, liquidated or contingent. Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim and, absent objection, such claim is deemed allowed. A creditor or interest holder may vote to accept or reject the Plan by filling out and mailing to the Bankruptcy Court the ballot which has been provided in this package of information.

In order for the Plan to be accepted by a class of creditors, more than one half in number and at least two-thirds in amount of such class of claims must vote to accept the Plan. In order for the Plan to be accepted by interest holders, at least two-thirds in amount of interests must vote to accept the plan. You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished you. Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder. If a creditor does not submit a vote for or against the Plan, that creditor is deemed to have accepted and voted for the Plan under 11 U.S.C. §1129.

The Plan as proposed does appear to violate the Absolute Priority Rule and may or may not be confirmed over the objection of unsecured creditors. As set forth in 1129(b)(2)(B), the Absolute Priority Rule generally provides that equity holders cannot retain equity in the Reorganized Debtor unless all senior allowed claims are paid in full. However, Debtor's current majority Equity Interest Holders Tim Oyler and Michael Rhine are proposing to contribute new value to the Plan as described under Article VI on pages 8 and 9 under section 6.3, and this new value may be considered an exception to the Absolute Priority Rule. Any creditor or party in interest wishing to bid on the equity in the Reorganized Debtor must submit a bid to Debtor's counsel in writing in accordance with the bidding procedures outlined in Article VI of the Debtor's Plan.

While the Plan provides for certain payments at Confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is allowed. A Claim will be allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Court at a regular, evidentiary hearing and allowed in full or in part or disallowed. While the Debtor bears the principal responsibility for Claim objections, any interested party, including creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

D. DISCLOSURES REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires disclosure of certain facts:

(1) There are no payments made or promises of the kind specified in section 1129(a)(4)(A) of the Bankruptcy Code which have not been disclosed to the Court

(2) Counsel to the Debtor has advised the Debtor that the Debtor may require legal services in connection with this case after confirmation which may require reimbursement. Debtor may continue to use HOLDER LAW as counsel after confirmation.

## ARTICLE VIII

## ANALYSIS OF CLAIMS, DESCRIPTION OF LITIGATION, AND EXECUTORY CONTRACTS

A. CLAIMS

Under the Bankruptcy Code, a creditor may be able to participate in an estate whether or not the creditor has filed a proof of claim. Accordingly, the schedules filed by Debtor will largely determine the claims against the funds to be provided under the Plan. The Schedules of the Debtor, on file with the Court, show the amount of prepetition debt that the Debtor believes to exist.

B. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor anticipates the following leases/executory contracts will be assumed, rejected or have been previously terminated either at or upon confirmation:

*Assume:*

\* *Office Lease with Citizens Bank of Edmond* - Debtor will assume this lease for office space. Debtor is current under this lease agreement. The monthly lease payment is $1,632.00.

\* *Storage Lease with Extra Space Storage* - Debtor will assume this lease for storage space. Debtor is current under this lease agreement. The monthly payment is $132.00.

*License Agreement with Santa Fe Holdings – Debtor will assume this executory contract for the use of customer information.*

*Reject:*

None.

## ARTICLE IX

## FEASIBILITY, RISK ANALYSIS AND FINANCIAL PROJECTIONS

Under the test for feasibility under the Bankruptcy Code, the Court must look to the Debtor's projected income, expenses, assets and liabilities to determine whether the Plan will leave the estate financially stable. A finding of financial stability is not a guarantee, but a reasonable expectation of success. The Plan must provide the reorganized Debtor with the ability to service any debt included in the Plan and with enough capital to sustain ongoing operations. Debtor's Financial Projections for 2021 through 2026 are attached hereto as *Exhibit A* and incorporated by reference herein.

## ARTICLE X

## MATERIAL FEDERAL TAX CONSEQUENCES

Debtor recognizes that its Plan of Reorganization may have some tax consequences; however, Debtor believes that the Plan and Disclosure Statement do not contain any material federal tax consequences to the Debtor, any successor to the Debtor, and/or a hypothetical investor typical of the holders of claims or interests in the case. In any event, all creditors, equity holders and parties in interest should consult their own tax advisors regarding the potential tax consequences of this Plan and Disclosure Statement.

## ARTICLE XI

## RETENTION OF CAUSES OF ACTION AND INTENT TO PURSUE ACCOUNTS RECEIVABLE AND WARRANTY CLAIMS

The reorganized Debtor specifically reserves and retains the right to pursue any and all pre-petition and post-petition causes of action that may exist. In addition, the reorganized Debtor reserves and retains the right to pursue any and all pre-petition and post-petition warranty claims. However, the Debtor does not anticipate bringing any avoidance actions against any third parties in this proceeding

## ARTICLE XII

## **CONCLUSION**

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. Since, if the Plan is confirmed, you will be bound by its terms, you are urged to review this material and make such further inquiries as you may deem appropriate and then place an informed vote on the Plan.

Dated: August 16, 2021                     */s/ Neil Goldstein*
                                            Neil Goldstein, Chief Restructuring Officer


                                            Respectfully submitted,

                                        By: */s/ Areya Holder Aurzada*
                                            Areya Holder Aurzada
                                            State Bar No. 24002303
                                            HOLDER LAW
                                            901 Main Street, Suite 5320
                                            Dallas, Texas 75202
                                            Telephone: (972) 438-8800
                                            Email: areya@holderlawpc.com

                                            Counsel for the Debtor